STATE OF TENNESSEE
DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TENNESSEE 37243

CERTIFIED MAIL

7015 0640 0007 0044 6330

FIRST CLASS

7015 0640 0007 0044 6330        07/26/2016
ESSEX INSURANCE COMPANY, INC.
4521 HIGHWOODS PARKWAY
GLEN ALLEN, VA 23060

UNITED STATES POSTAGE
02 1R                    $ 06.70¢
0004292626          JUL 28 2016
MAILED FROM ZIPCODE 37243

EXHIBIT A

# SHUTTLEWORTH WILLIAMS, PLLC

**CHRISTOPHER H. CRAIN**
E-mail: ccrain@shuttleworthwilliams.com
*Admitted in Arkansas and Tennessee

ATTORNEYS AT LAW
22 NORTH FRONT STREET, SUITE 850
P.O. BOX 3020
MEMPHIS, TENNESSEE 38173-0020
TELEPHONE: 901-526-7399
FACSIMILE: 901-526-5056

Direct Dial: (901) 328-8245

July 18, 2016

State of Tennessee
Deptartment of Commerce & Insurance
Attention: Service of Process
500 James Robertson Parkway
Nashville, Tennessee 37243-1131

> RE:   TSM Corporation v. Markel Corporation/Essex Insurance Company
>        Circuit Court of Shelby County, Tennessee Docket Number CT-002296-16
>        Our File No.:  00578.19464

Dear Sir/Madam:

Enclosed for service please find two (2) copies of a Complaint along with an original and one copy of the Summons for Essex Insurance Company.  I have also enclosed the fee of $15.00 along with my Affidavit with the last known address of Essex Insurance Company which is 4521 Highwoods Parkway, Glen Allen, Virginia 23060-6148.

If you have any questions, then please contact me.

Sincerely,

SHUTTLEWORTH WILLIAMS, PLLC

CHRISTOPHER H. CRAIN

CHC/saw

Enclosures

FILED 18

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

---

**TSM CORPORATION,**

    **Plaintiff,**

**vs.**
                                      **Docket No. CT-002296-16**
                                        **Division IX**

**ESSEX INSURANCE COMPANY,**

    **Defendant.**

---

## AFFIDAVIT

---

        Comes now the affiant, Christopher H. Crain, who, having been duly sworn, on his oath makes the following true and correct statements:

        The last known address for Defendant Essex Insurance Company is as follows:

        Essex Insurance Company
        4521 Highwoods Parkway
        Glen Allen, VA 23060-6148

        FURTHER AFFIANT SAITH NOT.

                            _____
                            Christopher H. Crain

**STATE OF TENNESSEE**

**COUNTY OF SHELBY**

        Sworn to and subscribed before me this __18th__ day of July, 2016.

_____
NOTARY PUBLIC

My commission expires: ___MY COMMISSION EXPIRES MARCH 12, 2018___

1

19464 / MGD-CHC

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

July 26, 2016

Essex Insurance Company, Inc.                    Certified Mail
4521 Highwoods Parkway                            Return Receipt Requested
Glen Allen, VA  23060                             7015 0640 0007 0044 6330
NAIC # 39020                                      Cashier # 27028

Re:    Tsm Corporation   V.   Essex Insurance Company, Inc.

       Docket # CT-002296-16

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served July 22, 2016, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Shelby County
    140 Adams Street, Rm 324
    Memphis, Tn  38103

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. _CT-002296-16_

◉ Lawsuit
◯ Divorce

Ad Damnum $ _____

| TSM CORPORATION, | | ESSEX INSURANCE COMPANY, |
|---|---|---|
| | VS | |
| **Plaintiff(s)** | | **Defendant(s)** |

TO: (Name and Address of Defendant (One defendant per summons))

ESSEX INSURANCE COMPANY
Serve through
Tennessee Department of Commerce & Insurance
500 James Robertson Parkway
Nashville, TN 37243

Method of Service:
◯ Certified Mail
◯ Shelby County Sheriff
◉ Commissioner of Insurance ($)
◯ Secretary of State ($)
◯ Other TN County Sheriff ($)
◯ Private Process Server
◯ Other
($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on  Christopher H. Crain, Esq.                    Plaintiff's

attorney, whose address is  Shuttleworth Williams, PLLC, 22 N. Front Street, Suite 850, Memphis, TN 38103

telephone  (901) 526-7399        within THIRTY (30) DAYS after this summons has been served upon you, not including the day
of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED ___6/6/2016___      By _____, D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment
should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish
to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless
it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain
items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and
your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these
items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek
the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE <u>ONLY</u>, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL, Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JIMMY MOORE , Clerk / DONNA RUSSELL, Clerk and Master     By: _____, D.C.

19646/MGD-CHC

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

_____   _____                 By: _____
Signature of person accepting service                                                                                   Sheriff or other authorized person to serve process

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____
Sheriff or other authorized person to serve process

F I L E D
JUN 06 2016
CIRCUIT COURT CLERK
BY_____D.C.

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

TSM CORPORATION,

    Plaintiff,

vs.                     Docket No.  CT 00 2296-16
                                       Div. 9

ESSEX INSURANCE COMPANY,

    Defendant.

## COMPLAINT

COMES NOW the Plaintiff by and through counsel of record and for its Complaint against the Defendant states as follows:

### I. PARTIES

1.    Plaintiff, TSM Corporation, is a Tennessee corporation with a principal office in Bartlett, Tennessee.

2.    Defendant, Essex Insurance Company ("Essex") has a principal office in Glen Allen, Virginia that provides insurance in the state of Tennessee and can be served through its President Gerald Albanese, Jr. or his nominee at 4521 High Woods Parkway, Glen Allen, Virginia 23060-6148 and/or through the Tennessee Commissioner of Insurance.

### II. JURISDICTION AND VENUE

3.    Jurisdiction and venue are proper in this Court as the insurance policy which is the subject of this action was issued and delivered to the insured, a Tennessee corporation, at its principal place of business in Bartlett, Tennessee.

### III. FACTS

4.    At all times relevant the Plaintiff was the owner of a 2012 Regal Marine Sport Coupe Cabin Cruiser "Z Boyz".

1

19464 / MGD-CHC

5.      Plaintiff and Defendant entered into a contract of insurance coverage for the "Z Boyz" under Policy No. 9CD4578-0 (the "Policy"). The "Policy" had a term of twelve months effective beginning August 4, 2014. The expiration date of the "Policy" was August 4, 2015. A copy of the "Policy" is attached hereto as Exhibit "A".

6.      Plaintiff paid all premiums to Plaintiff for coverage under the "Policy"

7.      On or about June 18, 2015, the "Z Boyz" sank while docked at Home Port Marina in Palm Harbor, Florida.

8.      Soon thereafter, TSM asserted a formal claim with the Defendant Essex Insurance Company to cover the resulting loss and damage pursuant to the insurance policy which TSM purchased to cover precisely such loss and damage.

9.      Essex hired Anthony Dalton, P.E. to inspect the vessel on or about August 11, 2015. The vessel was inspected by Mr. Dalton on behalf of Essex Insurance Company.

10.     On or about December 9, 2015, Defendant denied Plaintiff's claim asserting that the bilge pumps were not working at the time of the sinking. Defendant claimed that the aft bilge pump was improperly wired. Further, Defendant claimed that the vessel had open screw holes due to a previous unreported accident.

11.     The Defendant's denial and bases therefore were improper and without merit.

12.     Due to the wrongful denial of the claim, TSM was forced to hire its own surveyor to inspect the Z Boyz. Plaintiff's investigation reveals that the bilge pumps were wired correctly. Plaintiff's investigation further revealed that there was no prior accident or damage that caused the screws to loosen or become missing.

13.     Defendant was made aware that the aft bilge pump was correctly wired and further that there was no prior unreported accident involving the "Z Boyz".

14.     The Plaintiff's investigation revealed that the Z Boyz was well maintained by Plaintiff.

2

## IV. CAUSES OF ACTION

**Count I – Breach of Contract**

15.     The Plaintiff fully complied with all terms and conditions of the insurance policy and further cooperated with Defendant's investigation of the insurance claim made by Plaintiff.

16.     Defendant wrongfully refused to make payment to the Plaintiff for the damage to "Z Boyz" in accordance with the terms and conditions of the Policy of Insurance resulting in a breach of the policy.

17.     Plaintiff had an insurable interest under the policy such that payment of the policy limits should have been made in the amount of $195,000.00.

18.     Defendant is liable to the Plaintiff for its losses, including all amounts owed under the "Policy" and numerous and associated incidental and consequential damages.

19.     As a result of the breach of contract Plaintiff has sustained compensable losses and expenses for the amounts claimed under the "Policy".

20.     Essex' breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore, justifying an award of punitive damages (see *Riad v. Erie Insurance Exchange, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013)*. Specifically, Defendant intentionally, fraudulently, maliciously and/or recklessly (1) failed to effectuate a prompt and fair settlement of the Plaintiff's claim when liability was clear; (2) failed to conduct a reasonable investigation concerning issues surrounding the cause of the sinking; (3) unjustly refused to pay Plaintiff's claim for its own financial preservation. Accordingly Plaintiff seeks, and is entitled to, punitive damages.

WHEREFORE, as a result of the foregoing, Plaintiff requests the Court award judgment against the Defendant as follows:

A.     For compensatory Damages not to exceed $275,000.00;

3

B.    For punitive Damages not to exceed $1,000,000.00;

C.    For all costs incurred by Plaintiff as a result of this action;

D.    For pre- and post-judgment interest;

E.    For any and all other relief to which it may be entitled.

## V.  JURY DEMAND

Plaintiff demands a Trial by Jury.

Respectfully submitted,

SHUTTLEWORTH WILLIAMS, PLLC

BY: _____
Christopher H. Crain  (#19900)
Michael G. Derrick  (#14820)
ccrain@shuttleworthwilliams.com
mderrick@shuttleworthwilliams.com
22 North Front Street, Suite 850
Memphis, TN 38103
Telephone:  (901) 526-7399
Facsimile:  (901) 527-5056
Attorneys for Plaintiff, TSM Corporation

4

19464 / MGD-CHC



EXHIBIT
A



# MARKEL MARINE

## COMMON POLICY DECLARATIONS

Insurance Coverage is provided by the Company designated by (X):

| | | |
|---|---|---|
| ☒ ESSEX INSURANCE COMPANY | ☐ MARKEL AMERICAN INSURANCE COMPANY | ☐ MARKEL INSURANCE COMPANY |

| | | | |
|---|---|---|---|
| **PREVIOUS POLICY NUMBER:** | N/A | **POLICY NUMBER:** | 9CD4578-0 |
| **NAMED INSURED:** | TSM CORPORATION | | |
| **MAILING ADDRESS:** | 7622 BARTLETT CORPORATE DR #101<br>BARTLETT, TN  38133 | | |
| **POLICY PERIOD:** | 8/4/2014-8/4/2015 | | |

**At 12:01 A.M. Standard Time at your mailing address shown above (unless noted otherwise in the policy form)**

THIS POLICY CONSISTS OF THE COVERAGE PARTS FOR WHICH PREMIUM IS INDICATED BELOW. THE <u>ANNUAL MINIMUM EARNED PREMIUM</u> IS 25% OF THE COVERAGE TOTAL PREMIUM AND MAY BE SUBJECT TO AUDIT AND ADJUSTMENT.

Vessel Protection and Indemnity:        $1,250.00
Hull:                                                     $4,500.00

Coverage Total:                                  $5,750.00

| | |
|---|---|
| Policy Fee: | $35.00 |
| FL SL Tax: | $289.25 |
| FHCF: | $75.21 |
| FL Stamping Fee: | $10.12 |

Taxes and Fees                              $409.58 ←

Policy Total:                                  $6,159.58

**Forms and Endorsements:** 011-1091 (1/06), OM-1061-3 (1/06), OM-HULLDEC (1/06), OM-PandI-VS (1/06), OM-048 (1/06), OM-VESSELOPS (7/00), OM-SP38A (01/08), MEIL 1211 (06/10), OM-JGF8 (5/99), OM-MACHEX (6/99), OM-PASSLIAB (11/01), OM-PBW (5/99), OM-ROWEX (01/08), OM-SPWPD (9/98), OM-SWIMEX (6/99), 011-1097 (1/02), 011-0953 (01/08), 011-2173 (01/08), 011-1054 (05/09)

**Agency Name & Address:**    Harbor Risk, a division of Wells Fargo Special Risks, Inc.

801 Broadway Ave. NW #305

Grand Rapids, MI  49504

**Agency Number:** 74988

Countersigned: _____          _____
                                    **Date**                              **Authorized Agent**

**Producing Agent:**

In return for the payment of premium and subject to these declarations and all the terms of this policy including its warranties and endorsements, we agree to provide the insurance as stated herein.

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.



**LIABILITIES COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**

These Supplemental Declarations form a part of policy number: 9CD4578-0

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit (other than Products - Completed Operations) | $1,000,000.00 |
| Products - Completed Operations Aggregate Limit | N/A |
| Personal and Advertising Injury Limit | N/A |
| Each Occurrence Limit | $1,000,000.00 |
| Fire Damage Limit | N/A    Any one fire |
| Medical Expense Limit | N/A    Any one person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY**

**Form of Business:**   ☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent, or occupy:  N/A

**PREMIUM**

| Description of Hazards/ Insured Classification(s) | Code No. | Premium Basis | Rate(*) | Advance Premium (**) |
|---|---|---|---|---|
| Vessel Protection and Indemnity as per form OM-PandI-VS | | As per form OM-PandI-VS | As per form OM-PandI-VS | $1,250.00 |

Total Advance Premium  $1,250.00 (M&D)

(*)   Subject to audit and additional premium unless designated as Flat Annual

(**)   When a class code is indicated, premium shown is the Minimum and Deposit by class code or class code group

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown in the Common Policy Declarations and elsewhere in the policy):** 011-1091 (1/06), OM-1061-3 (1/06), OM-PandI-VS (1/06), OM-048 (1/06), OM-VESSELOPS (7/00), OM-SP38A (01/08), MEIL 1211 (06/10), OM-PASSLIAB (11/01), OM-PBW (5/99), OM-ROWEX (01/08), OM-SWIMEX (6/99), 011-2173 (01/08), 011-1054 (05/09)

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD

OM-1061- 3 (1/06)



**MARKEL**®

### VESSEL PHYSICAL DAMAGE COVERAGE PART DECLARATIONS

These Coverage Part Declarations form a part of policy number 9CD4578-0

| VESSEL SCHEDULE | | | |
|---|---|---|---|
| **NO.** | **VESSEL DESCRIPTION** | **INSURED VALUE** **DEDUCTIBLE** | **COVERAGE FORM** |
| 1 | 2012 35' FRP Regal Marine Sport Coupe Cabin Cruiser, "Z Boyz", Hull ID # RGMVH011F012, with (2) 300hp 2010 Volvo Penta Engines, Serial #'s: A115981 and A115979 | $195,000.00          $5,000.00 | OM-SPWPD |

**DEDUCTIBLE EXCEPTIONS- PER OCCURRENCE UNLESS OTHERWISE NOTED.**

$10,000.00    named storm

**NAVIGATION WARRANTY**

| VESSEL NO. | NAVIGATION WARRANTY |
|---|---|
| 1 | Inland and near coastal waters of FL within 25 miles safe harbor |

**ADDITIONAL TERMS AND CONDITIONS** - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| VESSEL NO. | ADDITIONAL TERMS AND CONDITIONS |
|---|---|

**ADDITIONAL WARRANTIES** - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| VESSEL NO. | ADDITIONAL WARRANTIES |
|---|---|

**FORMS AND ENDORSEMENTS** - OTHER THAN APPLICABLE FORMS AND ENDORSEMENTS SHOWN IN THE COMMON POLICY DECLARATIONS AND ELSEWHERE IN THE POLICY

011-1091 (1/06), OM-HULLDEC (1/06), OM-VESSELOPS (7/00), MEIL 1211 (06/10), OM-JGF8 (5/99), OM-MACHEX (6/99), OM-SPWPD (9/98), 011-1097 (1/02), 011-0953 (01/08), 011-1054 (05/09)

**MORTGAGE HOLDER(S)**

| VESSEL NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|

**PREMIUM FOR THIS COVERAGE PART: $4,500.00**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.



**MARKEL®**

**PROTECTION AND INDEMNITY VESSEL SCHEDULE**

This Coverage Part Vessel Schedule forms a part of policy number 9CD4578-0

| VESSEL SCHEDULE | |
| --- | --- |
| <u>NO.</u>  <u>VESSEL DESCRIPTION</u><br>1   2012 35' FRP Regal Marine Sport Coupe Cabin Cruiser, "Z Boyz" , Hull ID #<br>RGMVH011F012, with (2) 300hp 2010 Volvo Penta Engines, Serial #'s: A115981 and<br>A115979 | <u>COVERAGE FORM</u><br>OM-SP38A |

| NAVIGATION WARRANTY |
| --- |
| <u>VESSEL NO.</u>   <u>NAVIGATION WARRANTY</u><br>1           Inland and near coastal waters of FL within 25 miles safe harbor |

**ADDITIONAL TERMS AND CONDITIONS** - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| |
| --- |
| <u>VESSEL NO.</u>   <u>ADDITIONAL TERMS AND CONDITIONS</u> |

**ADDITIONAL WARRANTIES** - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| |
| --- |
| <u>VESSEL NO.</u>   <u>ADDITIONAL WARRANTIES</u> |



# ESSEX INSURANCE COMPANY

**DEDUCTIBLE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.**

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

## SCHEDULE

**Coverage**

**General Liability:**

N/A

**Marine Liabilities:**

Protection and Indemnity

**Exceptions:**

**Amount and Basis of Deductible**

$2,500.00 Per Occurrence

1.  Our obligation to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each occurrence and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2.  The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3.  The terms of this insurance, including those with respect to:
    (a)  Our right and duty to defend any "suits" seeking those damages; and
    (b)  Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4.  We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

OM -048 (1/06)



## COVERED OPERATORS ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

THIS ENDORSEMENT CHANGES THE POLICY.

This endorsement applies to all coverage parts.

No coverage is provided by this policy during in water vessel operation and use unless the vessel is operated by the person or persons named below:

Richard Linthicum

_____        _____
AUTHORIZED REPRESENTATIVE                             DATE

OM-VESSELOPS (7/00)

## PROTECTION AND INDEMNITY CLAUSES                    SP-38 Amended

**Assured: <u>See Common Policy Declarations</u>**

**Address: <u>See Common Policy Declarations</u>**

Loss, if any, payable to **<u>Assured OR Order</u>** from the **<u>See Common Policy Declarations</u>** beginning and ending at 12:01AM Standard until the **<u>See Common Policy Declarations</u>** time at place of issuance.

Amount hereby insured: $**<u>See Liabilities Coverage Part Supplemental Declarations</u>**

Premium: $**<u>See Common Policy Declarations</u>**

In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured such sums as the Assured, as owner of the **<u>See Liabilities Coverage Part Supplemental Declarations</u>** shall have become legally liable to pay and shall have paid on account of:

Loss of life of, or injury to, or illness of, any person; **excluding** crew and/or employees and paying passengers;

Loss of, or damage to, or expense in connection with any fixed or movable object or property of whatever nature;

Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the Assured;

Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or of any state thereof, or of any foreign country; provided, however, that this Company shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws;

Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the Assured arising out of a liability or an alleged liability of the Assured covered by this Policy.

**Notwithstanding the foregoing this Company will not pay for:**

The first $**<u>See Deductible Endorsement</u>** of claims covered by this policy, but, in no event shall the deductible exceed $<u>See Deductible Endorsement</u> each occurrence.  (For the purpose of this clause, each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)

Loss of, or damage sustained by the vessel named herein or her tackle, apparel, furniture, boats, fittings, equipment, stores, duel, provisions or appurtenances;

Loss resulting from cancellation of charters, non-collectability of freight, bad debts, insolvency of agents or others, salvage, general average, detention, loss of use or demurrage of the vessel named herein;

Any loss, damage, expense or claim with respect to any vessel or craft in tow of the vessel named herein and/or cargo thereon; provided this exclusion shall not apply to salvage services rendered in an emergency to a ship or vessel in distress, nor to loss of life and/or injury to, or illness of any person;

Any claim for loss of, damage to, or expense in respect of cargo on board the vessel named herein;

Any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation Act or any workmen's compensation act of any state or nation;

Any liability assumed by the Assured beyond that imposed by law; provided however that if by agreement, or otherwise, the Assured's legal liability is lessened, then this Company shall receive the benefit of such lessened liability.

Any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or

OM-SP38A (01/08)

the consequences thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms; or sustained or caused by mines or torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained or caused by any weapon of war employing atomic fission or atomic fusion or atomic fusion or radioactive material; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage or expense shall be excluded from this policy without regard to whether the Assured's liability in respect thereof is based on negligence or otherwise, and whether in time of peace or war.

Any loss, damage, expense or claim collectible under the **Form OM-SPWPD** of policy, whether or not the vessel named herein is actually covered by such insurance and regardless of the amount thereof.

Warranted that in the event of any occurrence which could result in a claim under this policy the Assured promptly will notify this Company upon receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleasing or other legal papers or documents relating to such occurrence.

Whenever required by this Company, the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with this Company in the defense of any claim or suit or in the appeal from any judgment.

This Company shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim covered by this policy, and shall have the direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made. The Assured shall at the option of this Company permit this Company to conduct, with an attorney of this Company's selection, at this Company's cost and expense and under its exclusive control, a proceeding in the Assured's name to limit the Assured's liability to the extent and in the manner provided by the present and any future statutes relative to the limitation of the shipowner's liability.

Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)

The Assured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which this Company may be liable.

The Assured shall not interfere in any negotiations of this Company, for settlement of any legal proceedings in respect of any occurrence for which this Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured is obligated to and shall take such steps to protect his and/or the Company's interests as would reasonably be taken in the absence of this or similar insurance.

Upon making payment under this policy this Company shall be vested with all of the Assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver such instruments and papers as this Company shall require and do whatever else is necessary to secure such rights.

No action shall lie against this Company for the recovery of any loss sustained by the Assured unless such action is brought within one year after the entry of any final judgment or decree in any litigation against the Assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim.

No claim or demand against this Company under this policy shall be assigned or transferred, and no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company.

It is expressly understood and agreed if and when the Assured has any interest other than as shipowner in the vessel named herein, in no event shall this Company be liable hereunder to a greater extent than if the Assured were the sole owner and entitled to petition for limitation of liability in accordance with present and future law.

Where the Assured is, irrespective of this policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise.

The navigation limits in the policy covering the hull, machinery, etc. of the vessel named herein are considered incorporated herein.

OM-SP38A (01/08)

This insurance shall be void in case the vessel named herein, or any part thereof, shall be sold, transferred or mortgaged, or if there by any change of management or charter of the vessel, or if this policy be assigned or pledged, without the previous consent in writing of this Company.

Either party may cancel this policy by giving ten days' notice in writing, if at the option of this Company pro rata rates, if at the request of the Assured short rates, will be charged and arrival.

**NAVIGATION WARRANTY:  See Form OM-PandI-VS**

**SPECIAL CONDITIONS:**

1.      POLLUTION EXCLUSION:  This policy does not insure against any loss, damage, cost, liability, expense, fine or penalty, of any kind or nature whatsoever, whether statutory or otherwise, imposed upon the Insured, arising directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, spillage or leakage of oil, fuel, cargo, petroleum products, chemicals or other substances of any kind or nature whatsoever.

        All terms, conditions and warranties expressly contained in this Policy or implied at law, shall be deemed amended to the extent necessary to give full fore and effect to this clause.

2.      CANCELLATION CLAUSE:  This Policy may be canceled by either party giving 30 days written or telegraphic notice to the other. If canceled by the Insured, short rate will be charged; if canceled by these insurers, pro rata rates charged.  From all return premiums the same percentage of deduction (if any) shall be made as was allowed by these Insurers of receipt of the original premium.  Notice to the agent or broker who negotiated this insurance shall be considered notice to the Insured.

3.      RADIOACTIVE CONTAMINATION CLAUSE (LIABILITY):  Notwithstanding anything to the contrary herein, it is understood and agreed that this Policy shall not apply to any loss, damage or expense due to or arising out of, directly or indirectly, nuclear reaction, radiation or radioactive contamination, regardless of how it was caused.

**VESSEL SCHEDULE:**

| DESCRIPTION OF VESSEL | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|
| **See Liabilities Coverage Part Supplemental Declarations** | **See Liabilities Coverage Part Supplemental Declarations** | **See Liabilities Coverage Part Supplemental Declarations** |

Attached to and made part of Policy No. **9CD4578-0** of the ESSEX INSURANCE COMPANY.

OM-SP38A (01/08)



# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM AMENDMENT
## ENDORSEMENT

The following modifies all coverage forms and coverage parts attached to this policy.

If this insurance policy is canceled at your request, there will be a Minimum Earned Premium retained by us of $1,437.50 or 25% (percent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

MEIL 1211 06 10


# ESSEX INSURANCE COMPANY

## ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**
* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

## TOTAL LOSS ENDORSEMENT

Earned Premium Endorsement - It is understood and agreed that in the event of a total or constructive total loss of any real or personal property insured under this policy, the entire policy premium shall be earned in full and no return premium shall be due.

Other terms and conditions of this policy remain unchanged.

_____          _____
**AUTHORIZED REPRESENTATIVE**                    **DATE**

OM-JGF8 (5/99)



## Machinery Damage Limitation Endorsement

Anything herein contained to the contrary notwithstanding for and in consideration of premium charged it is understood and agreed coverage for machinery (including but not limited to: engines, motors, transmissions, drive shafts and inboard/outboard units) is limited to loss caused by or resulting from: fire, sinking, or total or constructive total loss of the vessel.

OM-MACHEX (6/99)



**ESSEX INSURANCE COMPANY**

## PAYING PASSENGER ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

It is agreed that for and in consideration of the premium as quoted Line 11 of form OM-SP38A is deleted and replaced by the following:

11.   Loss of life of or injury to any persons EXCLUDING crew and/or employees.

AUTHORIZED REPRESENTATIVE          DATE

OM-PASSLIAB (11/01)



# ESSEX INSURANCE COMPANY

## PASSENGER BOAT WARRANTY

**THIS ENDORSEMENT CHANGES THE POLICY.**
* Entry optional if shown in the Common Policy Declarations. If no entry shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

**This endorsement changes the coverage provided herein. Please read it carefully.**

For and in consideration of the coverage provided herein the insured warrants and agrees:

- All vessels carrying passengers will carry approved Coast Guard life preservers of type and size sufficient for each person on the boat;

- No vessel will be operated by any person who is less than 25 years of age and does not possess a valid and current captains license appropriate for size and type boat operated;

- All boats which fall within the jurisdiction of U.S. Coast Guard certification and inspection must be currently certified for passenger carriage by U.S. Coast Guard; and,

- All boats will be equipped with U.S. Coast Guard required operational and safety equipment in good working order.

_____
**AUTHORIZED REPRESENTATIVE**                    **DATE**

OM-PBW (5/99)

 **ESSEX INSURANCE COMPANY**

## REMOVAL OF WRECK EXCLUSION

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This policy does not cover claims, loss, costs or expense, fine, penalty, or other sum either directly or indirectly arising out of the removal of the wreck of any vessel and form OM-SP38A is amended to delete the following wording:

Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the Assured;

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

OM-ROWEX (01/08)



# ESSEX INSURANCE COMPANY

## SPECIAL PERILS COMMERCIAL OCEAN MARINE
### WATERCRAFT PHYSICAL DAMAGE COVERAGE FORM

<u>PROPERTY COVERED</u>  (Description of insured watercraft):  SEE FORM OM-HULLDEC

<u>WARRANTIES</u>:  SEE FORM OM-HULLDEC

<u>DEDUCTIBLE:</u>  SEE FORM OM-HULLDEC

**Property We Cover:**

The **boats, motors** and boat **trailers** described above and referred to as **watercraft or property** herein after.

**Losses We Cover:**

**We** will pay for physical loss or damage to
the above described property except as limited or excluded hereafter.

**We** do not cover loss to the property described herein resulting in any manner from:

1.  wear and tear; marring; scratching; gradual deterioration; inherent vice; rust; corrosion; electrolysis; mold; wet or dry rot; marine borers; vermin; infestation; osmosis

2.  a latent or physical defect.  This exclusion applies only to the item having the latent or physical defect and includes manufacturing and design defects.

3.  structural or electrical or mechanical breakdown; overheating; electricity, unless fire ensues.

4.  freezing and damage caused by ice.

5.  repairing, renovating, servicing or maintenance.  Fire or explosion resulting from any of these is covered, but only for loss caused by the fire or explosion.

6.  infidelity of an **insured person's** employees.

7.  infidelity of any person to whom the property is entrusted or rented.

8.  intentional or criminal acts of an **insured person**, if the loss that occurs:
    a)  may be reasonably expected to result from such acts; or
    b)  is in fact the intended result of such acts.

9.  damage occurring while the property is used:

OM-SPWPD (9/98)

a)    in any illegal transportation or trade;

b)    for the transportation of people or property for a fee; this does not include rental to others.

10.    damages occurring while **your watercraft** is in any sanctioned race (unless the insured **watercraft** is a sailboat); or in any speed or jumping contest.

11.    Losses to spars or sails while racing.

12.    confiscation or seizure by a government authority.

13.    conversion or embezzlement of **your watercraft** by any person in possession of **your watercraft** which is subject to a bailment lease, conditional sale, purchase agreement or encumbrance.

14.    neglect by an **insured person** to take all reasonable steps to save and preserve property at and after a loss or when the property is endangered by a loss **we** cover.

15.    nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

     **We** do not cover direct loss by fire resulting from nuclear action.

16.    war or warlike acts, including insurrection, rebellion or revolution.

17.    Damage to machinery which extends below the waterline (which includes props, shafts, and struts) unless the loss be total or constructive total; or to outboards dropped overboard.

**Conditions**

1.    **Deductible**
     **We** will pay only when a covered loss exceeds the deductible indicated herein.

2.    **Territory**
     This policy applies only while the insured **watercraft** is within the **Navigation Warranty** specified above.

3.    **Seaworthiness Warranty**
     **You** warrant that **your watercraft** will be kept in a safe and navigable condition whenever afloat and/or being operated.

4.    **Insurable Interest and Our Liability**
     In the event of a covered loss, **we** will not pay for more than the insurable interest of an **insured person** in the property covered, nor more than the amount of coverage afforded by this policy.

5.    **What You Must Do After a Loss**
     In the event of a loss to any property that may be covered by this policy, **you** must:
     a)    promptly give **us** or **our** agent written notice. Report any theft to the police as soon as possible.

OM-SPWPD (9/98)

b)  protect the property from further loss.  Make any reasonable repairs necessary to protect it.  Keep an accurate record of any repair expenses.

c)  give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, description, actual cash value and the amount of loss claimed.

d)  produce available bills, receipts and related documents, or certified copies, that substantiate the loss claimed.

e)  as often as **we** reasonably require:
   1)  show **us** the damaged property.
   2)  submit to examinations under oath and sign a transcript of the same.

f)  at **our** request, give **us** a signed, sworn proof of loss within 60 days from the date of loss.  This statement must include the following information:
   1)  the date, location and cause of loss:
   2)  the interest **you** and others have in the property, including any encumbrances;
   3)  other insurance that may cover the loss;
   4)  any  changes in ownership of the property that have occurred during the policy period;
   5)  an inventory of the damaged or stolen property described in 5.c).

6.  **Our Settlement Options**
   In the event of a covered loss, **we** have the option to:
   a)  repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b)  pay for all or any part of the damaged, destroyed or stolen property; or
   c)  take all or part of the covered property at the agreed or appraised value.

   **We** will notify **you** of the option or options **we** intend to exercise within 30 days after **we** receive **your** signed, sworn proof of loss.

7.  **How We Settle A Loss**
   Covered loss to insured Property
   will be settled in the as follows:

Actual Cash Value
   This means there may be a deduction for depreciation.  In making an actual cash value settlement, payment will not exceed the **smallest** of the following amounts:
   1)  the actual cash value at the time of the loss;
   2)  the amount necessary to repair or replace the damaged or stolen property.  **We** will not pay more than the cost to make repairs in accordance with:
      a)  the makers specifications; or
      b)  generally accepted shipyard repair practices;
   3)  the limit of liability shown on the declarations page applicable to the damaged property.

8.  **Recovery Cost**
   Loss to the **boat** and **motor** described on the declarations page will be regarded as total loss when the expense of recovering the damaged property would exceed **our** limit of liability.

9.  **Our Payment Of Loss**
   **We** will settle any covered loss with you.  **We** will pay you unless another payee is named in the policy.  **We** will pay within 60 days after the amount of loss is finally

OM-SPWPD (9/98)

determined.  This amount may be determined by an agreement between **you** and **us**, a court judgment, or an appraisal award.

10. **Appraisal**.
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal.  Upon such demand each party must select a competent and impartial appraiser and notify the other of the appraisers identity within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where **you** live to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item.  If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the amount of loss.  If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

11. **Abandoned Property**
**We** are not obligated to accept any property abandoned by an **insured person**.

12. **Our Rights to Recover Payment**
When **we** pay for any loss, **your** rights of recovery from anyone else
become **ours** up to the amount **we** have paid.  You must protect these rights and help **us** enforce them.

13. **Suit Against Us**
No suit or action may be brought against **us** unless there has been full compliance with all the policy terms.  Any suit or action must be brought within one year after the date of loss.

14. **No Benefit to Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

15. **Loss Payable Clause**
If a loss payee is named on the declarations page, any loss payable under Section I shall be paid to **you** and the loss payee, as interests appear.  Loss covered under Section I will be adjusted with **you** only.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay **our** share.  **Our** share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

17. **Cancellation**
This policy may be canceled by either party upon 30 day written notice.  If by notice of the insured, short rate calculation of return subject to minimum and deposit noted on Declaration page; if by notice of the insurer, prorata calculation of return shall be used.

OM-SPWPD (9/98)



# ESSEX INSURANCE COMPANY

## IN WATER ACTIVITIES EXCLUSION ENDORSEMENT

*The following spaces proceeded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The General Liability and or Protection and Indemnity coverage afforded by this policy excludes and does not cover loss, damage, injury or expense caused by or resulting from any in water activities such as, but not limited to, swimming, diving, waterskiing.

**Where there is no coverage, there is no duty to defend.**

_____  _____
**AUTHORIZED REPRESENTATIVE**     **DATE**

OM-SWIMEX(6/99)


# ESSEX INSURANCE COMPANY

## ORGANIC PATHOGEN EXCLUSION

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 9CD4578-0 | 8/4/2014 | TSM CORPORATION |

**THIS ENDORSEMENT CHANGES THE POLICY.**

This policy does not insure any loss, damage, claims, cost or expense, fine, penalty or other sum either directly or indirectly arising out of, relating to, or caused by an "organic pathogen".

This exclusion applies regardless of whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence to the existence of an "organic pathogen"; (iii) any loss of use, occupancy or functionality or decreased valuation of covered property or loss of business income; (iv) any action required, including but not limited to testing, repair, replacement, removal, cleanup, abatement, disposal, relocation, or actions taken to address medical or legal concerns; or (v) any suit or administrative proceeding or action involving the insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to fungus, bacteria, virus, or other microorganism of any type, including but not limited to their byproducts such as spores or mycotoxin, or any hazardous substance as classified by the EPA.

All other terms and conditions remain unchanged.

Nothing herein contained shale be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

011-1097 (1/02)



# **ESSEX INSURANCE COMPANY**

## **EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

011-0953 (01/08)

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

011-0953 (01/08)



# ESSEX INSURANCE COMPANY

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

011-2173 (01/08)



# ESSEX INSURANCE COMPANY

## INSURANCE POLICY

011-1054 (05/09)

In consideration of the payment of the Premium, in reliance upon the statements made to the Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A.   **CANCELLATION**
1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b.   30 days before the effective date of cancellation if we cancel for any other reason.
3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4.   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5.   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6.   If notice is mailed proof of mailing will be sufficient proof of notice.

B.   **CHANGES**
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C.   **EXAMINATION OF YOUR BOOKS AND RECORDS**
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D.   **INSPECTIONS AND SURVEYS**
We have the right but are not obligated to:
1.   Make inspections and surveys at any time;
2.   Give you reports on the conditions we find; and
3.   Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:
1.   Are safe or healthful; or

2.   Comply with laws, regulations, codes or standards. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

E.   **PREMIUMS**
The first Named Insured shown in the Declarations:
1.   Is responsible for the payment of all premiums; and
2.   Will be the payee for any return premiums we pay.
3.   Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

F.   **PREMIUMS, MINIMUM DEPOSIT AND AUDIT**
All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:

Premium shown as advanced premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonable business, however, the minimum premium then becomes fully earned at the end of your season.

G.   **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

This Policy is not valid unless a Declarations Page and Coverage Form is attached.

011-1054 (05/09)

# NUCLEAR ENERGY LIABILITY EXCLUSION

1.   **The insurance does not apply:**

A.   Under any Liability Coverage, to "bodily injury" or "property damage:"

   (1)   With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.   Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if

   (1)   The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2)   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

   (3)   The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.   **As used in this endorsement**

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
(a)   Any "nuclear reactor;"
(b)   Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where "hazardous properties", "nuclear material" or "radioactive material" is used, processed or stored or has been discharged or dispersed therefrom;
(c)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"
(d)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(e)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

011-1054 (05/09)

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount due and owed hereunder, as per the terms and conditions of this policy, this Company, at the request of the Insured (or reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon:

The Company's President, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA  23060-6148 and that in any suit instituted against anyone of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from Inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

***We may disclose nonpublic personal information about you to the following types of third parties:***

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Kathleen Anne Sturgeon*

**Secretary**

*Gerard Albanese Jr*

**President**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright. Insurance Services Office, Inc. 1982, 1983